PEOPLE v ORR

Docket No. 267189. Submitted April 4, 2007, at Detroit. Decided May 17, 2007, at 9:10 a.m.

Darryl G. Orr was convicted by a jury in the Wayne Circuit Court of first-degree murder and possession of a firearm during the commission of a felony in connection with the 2004 shooting death of Miguel Crittendon. The defendant had been charged with an earlier, nonfatal shooting of Crittendon in 2003, but had not been apprehended by the police. The trial court, Betty J. Sanders, J., allowed the prosecution to present evidence pertaining to the 2003 shooting during Orr's trial for the 2004 shooting. Orr appealed his conviction.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in allowing the prosecution to present evidence that the defendant had previously shot the same man. The evidence was admissible for the prosecutor's stated purposes of establishing motive, intent, and absence of mistake, and its relevance for these purposes, as well as for establishing premeditation, outweighed the danger of unfair prejudice when considered in its entirety, despite the fact that it included unnecessary references to the nature and extent of the victim's injuries.

2. Crittendon's statements naming the defendant as his shooter in the 2003 incident were admissible as dying declarations despite the fact that the injuries resulting from that incident were not fatal. The rule of evidence adopted by the Michigan Supreme Court excepting dying declarations from the rule prohibiting hearsay requires only that the declarant make the statement while under the belief that death was imminent, and those cases decided after the rule was adopted that continued to require the declarant to die for a dying declaration to be admissible are not binding precedents.

Affirmed.

EVIDENCE — HEARSAY — DYING DECLARATIONS.

A statement is admissible under the dying-declaration exception to the hearsay rule if the declarant made the statement while under

the belief that death was imminent, regardless of whether the declarant subsequently died (MRE 804[b][2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Lori Baughman Palmer*, Assistant Prosecuting Attorney, for the people.

*Robin M. Lerg* for the defendant.

Before: WILDER, P.J., and SAWYER and DAVIS, JJ.

PER CURIAM. Defendant was convicted of first-degree murder[1] and possession of a firearm during the commission of a felony.[2] He was sentenced to life imprisonment for the first-degree murder conviction, and to two years' imprisonment for the felony-firearm conviction. Defendant appeals and we affirm.

Defendant was charged with shooting his sister's boyfriend, Miguel Crittendon, on September 8, 2003, on Henry Street in Detroit, but police could not locate defendant at the time. Crittendon recovered from his injuries, but then he was shot and killed on February 3, 2004, at a gas station in Detroit. Defendant was apprehended on March 13, 2004.

The prosecution was allowed to present evidence regarding the September 8, 2003, shooting under MRE 404(b). Defendant argues that the other-acts evidence was not logically relevant to the charged crime and its prejudicial effect substantially outweighed its probative value. We disagree. This Court reviews preserved evidentiary issues for an abuse of discretion.[3] A trial court

---

[1] MCL 750.316.

[2] MCL 750.227b.

[3] *People v Katt,* 468 Mich 272, 278; 662 NW2d 12 (2003).

abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes.[4]

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Generally, evidence of other acts is admissible under MRE 404(b) if offered for a proper purpose, the evidence is relevant, and its probative value is not substantially outweighed by its prejudicial effect.[5] The prosecution bears the burden of establishing the relevance of the other-acts evidence, and the trial court must closely scrutinize the logical relationship between the other-acts evidence and the fact at issue.[6]

Defendant first argues that the trial court did not explain the specific purposes for which the MRE 404(b) evidence was admitted or how the evidence related to those purposes. The prosecution explained at the evidentiary hearing that defendant had confessed to an unrelated double homicide and to both the September 8, 2003, shooting and February 3, 2004, murder of Crittendon. The prosecution sought to admit defendant's confession to the September 8, 2003, shooting to show motive, premeditated intent, and absence of mistake in the February 3, 2004, murder. The prosecution

---

[4] *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

[5] *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

[6] *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998).

argued that evidence of the prior shooting of the same person who was killed in the case at bar was logically relevant to show motive, premeditated intent, and absence of mistake. The prosecution claimed that, after Crittendon recovered from the first shooting, defendant sought him out the second time to "finish the job."

The trial court ruled that the purposes cited by the prosecution were appropriate to show motive, intent, and absence of mistake. The trial court stated that there was strong evidence that defendant committed the prior shooting, and, given the charge against defendant and his alibi defense, the probative value of the prior shooting far outweighed any prejudicial effect defendant might experience. We conclude that, between the prosecutor's arguments and the trial court's comments, the trial court sufficiently identified the specific purposes for which the prosecutor sought to admit the evidence.

Next, defendant claims that the prosecutor did not establish the relevance of the other-acts evidence. He states that, other than hearsay statements naming him as the September 8, 2003, shooter, there was nothing linking him to that shooting. He also states that the prosecution's theory that defendant killed Crittendon to keep him from testifying about the September 8, 2003, shooting, was mere speculation. Lastly, defendant claims that there was no evidence of acrimony between defendant and Crittendon.

However, defendant minimizes the hearsay statement of Crittendon that defendant was the shooter, and fails to consider his own confession to both shootings. "Relevance," according to the Supreme Court in *Crawford*,[7] "is a relationship between the evidence and a

[7] *Id.* at 387.

material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." According to Black's Law Dictionary (5th ed), " 'motive' is the moving power which impels to action for a definite result," or "that which incites or stimulates a person to do an act."

Here, the prosecutor used the prior shooting of Crittendon to establish motive. If a prior act tends to show why a perpetrator committed a "seemingly random and inexplicable attack," then the prior act is relevant for purposes other than the impermissible purpose of showing a defendant has a propensity for violence.[8] The trial court determined that there was "strong evidence" establishing that defendant shot Crittendon on September 8, 2003. Therefore, when Crittendon was murdered, instead of the murder appearing to be a seemingly random act of violence, defendant could have been motivated to "finish the job" and to silence Crittendon.

Furthermore, to prove first-degree murder, the prosecutor was required to establish defendant's premeditated intent to kill. Premeditation and deliberation, for purposes of a first-degree murder conviction, require "sufficient time to allow the defendant to take a second look."[9] Premeditation and deliberation can be established through "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide."[10] Here, the approximately five months between the shootings establish that defendant had time to deliberate the killing of

---

[8] *People v Hoffman*, 225 Mich App 103, 108; 570 NW2d 146 (1997).

[9] *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

[10] *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992).

Crittendon, and their relationship before the murder indicated that defendant wanted Crittendon dead. Thus, the September 8, 2003, shooting was logically relevant in proving the charged crime.

Defendant contends that the other-acts evidence was unduly prejudicial and, in essence, forced him to defend two cases simultaneously. He claims that there was extensive testimony about the prior shooting and that the jury would have difficulty distinguishing the prior shooting from the charged crime. However, this Court held in *People v Morris*[11] that evidence of prior assaults of a victim is probative of the issue of intent in a later-charged murder of the same victim and, therefore, is not unduly prejudicial. Likewise, because of the highly probative value of the evidence that defendant shot Crittendon during a prior altercation, its value could not be outweighed by its prejudicial effect on defendant.

Defendant specifically claims that testimony that Crittendon was shot nine times on September 8, 2003, including once between the eyes, and testimony about Crittendon's dying declarations, was unnecessary; and, therefore, its probative value was substantially outweighed by its prejudicial effect. The majority of the testimony regarding the September 8, 2003, shooting was highly probative and was not substantially outweighed by its prejudicial effect. Officer Lawrence Mitchell gave extensive testimony regarding the September 8, 2003, shooting, but the only reference to a dying declaration was when the prosecution laid the foundation to enter the statement by asking Mitchell whether he thought Crittendon would survive. The remainder of Mitchell's testimony was admissible under the excited-utterance exception to the rule exclud-

---

[11] *People v Morris,* 139 Mich App 550, 557; 362 NW2d 830 (1984).

ing hearsay. While Crittendon's father gave unnecessary testimony about the nature of Crittendon's injuries, he also testified regarding the relationship between Crittendon and Phillipene Orr, which was relevant considering that Orr is defendant's sister. Furthermore, Abdul Makki gave testimony about the September 8, 2003, shooting that made no mention of Crittendon being shot between the eyes or that Crittendon made a dying declaration. Last, the prosecutor referred to the dying declaration and the fact that Crittendon had been shot between the eyes on September 8, 2003, in his closing argument, but the court instructed the jury that the attorneys' statements and arguments are not evidence. Thus, the challenged testimony, when considered in its entirety, was more probative than prejudicial, and the trial court did not abuse its discretion in admitting it.

Furthermore, a trial court's instruction cautioning the jury against using evidence "to infer that a defendant had a bad character and acted in accordance with that character" can help mitigate any prejudicial effect that other-acts evidence may have on a jury.[12] The trial court here gave the jury such a cautionary instruction.

Next, defendant argues that Crittendon's statements to his father and to Officer Mitchell did not qualify as dying declarations, and that his statement to Mitchell did not qualify as an excited utterance. We disagree.

Defendant argues that Crittendon's statements naming defendant as the shooter are inadmissible as dying declarations because Crittendon did not die from the injuries he sustained on September 8, 2003. On the other hand, the prosecution argues that a plain reading of MRE 804(b)(2) does not require that the declarant

---

[12] *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002).

actually die from his injuries, but only that the declarant believes death is imminent.

Michigan adopted MRE 804(b)(2) in 1978, which provides that the following is not excluded by the hearsay rule:

> *Statement Under Belief of Impending Death.* In a prosecution for homicide or in a civil action or proceeding, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

Traditionally, the requirements for a dying declaration to be admissible are that the declarant must have been conscious of impending death, death must actually have ensued, the statement sought to be admitted in a criminal prosecution is against the individual who killed the decedent, and the statement relates to the circumstances of the killing.[13] Under this analysis, because Crittendon's naming of defendant as his assailant on September 8, 2003, did not relate to the circumstances of his death on February 3, 2004, Crittendon's

---

[13] *People v Siler*, 171 Mich App 246, 251; 429 NW2d 865 (1988); *People v Franklin*, 70 Mich App 343, 347; 245 NW2d 746 (1976). In 1976, *Franklin, supra* at 347, cited McCormick on Evidence, §§ 258-264, pp 555-560, for the requirements to admit a dying declaration, which included the requirements that the declarant die and that the statement relate to the circumstances of the killing. Michigan courts have continued to follow *Franklin* even after the adoption of MRE 804(b)(2) in 1978. See, e.g., *Siler, supra* at 251. However, a plain reading of MRE 804(b)(2) does not require that the declarant actually die from his or her injuries. Furthermore, the current McCormick on Evidence considers the requirement that the declarant actually die a "historical limitation" and notes that the federal rule does not require that the declarant die from his or her injuries, but, rather, requires only that the declarant be unavailable. 2 McCormick, Evidence (6th ed), § 310, pp 364-367. McCormick also notes that "a few states still require that the declarant die." *Id.* at p 367 n 15.

statements would be inadmissible as dying declarations as a matter of law. Because Michigan courts continued to follow this analysis after MRE 804(b)(2) was adopted, the trial court abused its discretion by admitting Crittendon's statements under the dying declaration exception to the hearsay rule.

But, as we noted, this is the traditional analysis that predates the adoption of MRE 804(b)(2). And while cases decided after the adoption of the rule continued to follow the requirement that the declarant subsequently died, we are not aware of any case decided after November 1, 1990, that has followed the traditional rule. Accordingly, we are not bound by a controlling decision in our interpretation of MRE 804(b)(2) and are free to analyze whether its terms changed the traditional rule.[14] For the reasons expressed below, we conclude that MRE 804(b)(2) did not retain the traditional requirement that the declarant must have died.

The same legal principles apply to the interpretation of court rules as apply to interpretation of statutes.[15] In both cases, where the plain language of the rule or statute is clear, it must be enforced as written with no further judicial construction or interpretation.[16] Thus, just as we cannot read into an unambiguous statute a provision not written by the Legislature,[17] we likewise cannot read into a court rule a provision not written by the Supreme Court.

MRE 804(b)(2), by its explicit terms, imposes the requirement that the declarant be under the belief that his or her death was imminent. The rule is silent

[14] See MCR 7.215(J)(1).

[15] *In re KH,* 469 Mich 621, 628; 677 NW2d 800 (2004).

[16] *Id.*

[17] *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 63; 642 NW2d 663 (2002).

regarding whether death must ensue. Moreover, it is instructive to look at what statements the rule deems admissible. Specifically, the rule deems admissible statements "concerning the cause or circumstances of what the declarant believed to be impending death." The words chosen again emphasize the importance of the declarant's belief, and place no importance on the declarant's actual death. If the Supreme Court intended to retain the common-law requirement of actual death, it would have made far more sense to phrase the last clause to say "concerning the cause or circumstances of the declarant's death." The closest the rule comes to requiring death is the general requirement that the declarant be unavailable as a witness.[18] But, as MRE 804(a) demonstrates, there are a number of ways other than death for a witness to be unavailable.

Thus, there being no evidence that the Supreme Court, in drafting the provisions of MRE 804(b)(2), was concerned with whether the declarant died, or any compelling reason that it should have had such a concern, there is no reason to deviate from the principle of reading the rule as written. And, as written, the rule imposes no requirement that the declarant actually died in order for a statement to be admissible as a dying declaration. Therefore, we conclude that this traditional requirement did not survive the adoption of MRE 804(b)(2). Accordingly, the statement in this case was admissible as a dying declaration.

In light of our resolution of this issue, we need not determine whether the statement was also admissible as an excited utterance under MRE 803(2).

Affirmed.

---

[18] MRE 804(b).