# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DEMETRIOUS EDWARD FAULKNER,

       Defendant-Appellant.

UNPUBLISHED
December 16, 2014


No.  316064
Wayne Circuit Court
LC No.  12-006882-FC

Before:  RIORDAN, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant, Demetrious Edward Faulkner, was found guilty of two counts of first-degree criminal sexual conduct (CSC), MCL 750.520b, (accomplices and multiple variables), and one count of first-degree home invasion, MCL 750.110a(2).  Defendant was sentenced to concurrent terms of 18 to 35 years' imprisonment for each of his CSC convictions, to be served consecutively to his term of 10 to 20 years' imprisonment for his home invasion conviction.  He appeals as of right.  We affirm his convictions but remand for resentencing.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim testified that she invited a friend, "Mike," to her apartment one night and that she left the door open for him.  When Mike arrived, a man she did not know, who was later identified as defendant, along with another unknown man, came into the apartment as well.  The victim was upset that defendant and the other man were there, so she asked Mike to make them leave.  Mike then went outside to his car.  After Mike left, defendant and the other man sexually assaulted her.  The men left and the victim called 911.  Thereafter, defendant returned, forced his way into the apartment, and sexually assaulted the victim again.  Officer Michael Sampson responded to the victim's earlier telephone call and arrived during the second sexual assault.  The victim told Sampson that the only person she "really knew" was Mike.  Sampson reported that the victim "looked like an emotional wreck, like something terrifying had happened to her."  He also testified that defendant walked out of the victim's bedroom with no shirt, no shoes, and with his pants undone.  Sampson interviewed the victim that evening.  He testified that the victim's statements to him were "erratic," and that she was "saying different things that happened, trying to give a story but jumping all around, to different places."  At times, her story changed.  Sampson testified that his report indicated that three men had sexually assaulted the victim.

Sergeant Donald Mandell testified that he interviewed both defendant and the victim. Mandell stated that defendant did not know the victim's name. Based on Sampson's report, Mandell initially believed that three men had sexually assaulted the victim; later, after speaking with the victim, Mandell did not believe that Mike was involved. Mandell acknowledged that some of the victim's statements were inconsistent. He also testified that the victim was "crying" and "shaking" while she spoke with him.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that his trial counsel rendered ineffective assistance by failing to adequately impeach Mandell and the victim. We remanded this case to the trial court for defendant to develop a record regarding these assertions. *People v Faulkner*, unpublished order of the Court of Appeals, entered March 19, 2014 (Docket No. 316064). After an evidentiary hearing, the trial court held that defendant's trial counsel was not ineffective and denied defendant's motion for a new trial.

"Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, while determinations of constitutional law are reviewed de novo. *Id*.

The Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee the right to effective assistance of counsel for criminal defendants. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish that his counsel did not render effective assistance and that he is therefore entitled to a new trial, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

Defendant first calls our attention to a supplemental police report written by Mandell that he alleges shows that defendant knew the victim's name. The report was written after Mandell interviewed defendant and refers to the victim by her name. Defendant asserts that his trial counsel should have used this report to impeach Mandell's testimony that defendant did not know the victim's name. Trial counsel testified on remand that he did not remember whether he asked Mandell about whether defendant knew the victim's name. He testified that in a video or report "[t]here was a reference that [defendant] did not know the complainant's name."

"[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). We find that defendant has not established that the report definitively shows that defendant knew the victim's name. The report is not a verbatim transcription of defendant's statement; rather, it is Mandell's written report. Defendant has not negated the possibility that Mandell merely inserted

the victim's name into the report without defendant having said it or that Mandell told defendant the victim's name.

Second, defendant draws our attention to a video recording of an interview that Mandell conducted with the victim. In the video, Mandell asks the victim, "Now, when they do the rape kit, is [defendant's] semen the only semen that's gonna be found?" The victim answers, "Yeah." Mandell asks, "You didn't have any sexual intercourse with nobody else last night?" The victim answers, "That night, no." Defendant argues that these statements were contrary to the testimony given by Mandell and the victim at trial and that the video should have been used to impeach them. With regard to Mandell, defendant contends that Mandell testified that the victim's statements in the interview were consistent with statements she made in a 911 telephone call, and he argues that the victim's statements in the interview could have and should have been used to impeach Mandell's testimony. Defendant contends that the statements were actually inconsistent, as the victim stated in the 911 telephone call that three men—defendant, the unknown individual, and Mike—sexually assaulted her, and she said during the interview that only defendant sexually assaulted her. With regard to the victim, defendant argues that counsel was ineffective for failing to impeach her trial testimony—that defendant and the unknown individual had sexually assaulted her—with her statements from the interview about how only defendant sexually assaulted her.

On remand, defendant failed to question trial counsel about why he did not use the video to impeach the victim or Mandell. Based on our review of the video, we find that it was sound strategy to forgo presenting it to the jury and that defense counsel was not ineffective as alleged by defendant. The victim cries throughout the interview. She struggles to recount her story and is visibly distraught. She also makes several statements that were consistent with her trial testimony and she was adamant that she did not know defendant. Thus, it was sound trial strategy not to show the video to the jury. In addition, contrary to defendant's assertions on appeal, Mandell did not testify that *all* of the victim's statements on the 911 tape were consistent with her statements during the interview. Rather, he noted that some of her statements were inconsistent, particularly with regard to whether she was sexually assaulted by all three men. Mandell noted that, during the recorded interview, the victim only spoke about what happened when defendant came back the second time. Consequently, trial counsel's performance was not objectively unreasonable.

Furthermore, even assuming trial counsel's strategy was unsound, defendant cannot show that he was prejudiced by counsel's alleged shortcomings. At most, the video could have shown that the victim presented conflicting stories about how many individuals sexually assaulted her. Such information was cumulative to testimony that had already been admitted. Sampson testified that the victim reported that all three men had sexually assaulted her; this was inconsistent with the victim's testimony at trial. Defense counsel adequately explored this discrepancy through cross-examination. In addition, Sampson testified that the victim's initial statements about the assaults were "erratic," that she was "saying different things," and that the victim gave "bits and pieces" of information, jumping "between the three males that had entered the location, going from one male to another male[.]" Overall, Sampson opined that the victim's initial statements were "[j]ust everywhere." Thus, there was already information before the jury that the victim made conflicting reports about how many individuals sexually assaulted her. See *People v Carbin*, 463 Mich 590, 604-605; 623 NW2d 884 (2001) (explaining that where

evidence was "for the most part, cumulative[,]" there was not a reasonable probability that, but for counsel's allegedly deficient performance, the result of the proceeding would not have been different). And, we note that all of the victim's statements, including her statements in the recorded interview, contained one constant theme: that defendant sexually assaulted her. Therefore, defendant cannot prevail on his ineffective assistance of counsel claim.[1]

### III. OV 11, 12, 13

Defendant next argues that Offense Variables (OVs) 11, 12, and 13 were scored incorrectly. The trial court scored OV 11 at 25 points, it did not score OV 12, and it scored OV 13 at 25 points. The trial court calculated defendant's total OV score at 75 points. With an OV score of 75 (Level IV), and a prior record variable (PRV) score of 52 (Level E), defendant's recommended minimum guidelines range for the Class A offense of first-degree CSC, MCL 777.16y, was 135 to 225 months' imprisonment, MCL 777.62. Defendant contends that the trial court should have scored either OV 11 or OV 13 at 25 points, but not both, and that it should have scored OV 12 at 5 points. Thus, according to defendant's calculations, his OV score should have been 55 points, not 75 points. An OV score of 55 points would drop defendant from OV Level IV to OV Level III, which combined with a PRV Level E, would produce, for the Class A offense of first-degree CSC, a recommended minimum guidelines range of 126 to 210 months' imprisonment. See MCL 777.62. According to defendant, his minimum sentence of 18 years—216 months—would be outside of that range and would therefore be impermissible, absent a departure for substantial and compelling reasons.

The sentencing transcript does not contain an explanation for the trial court's scoring decision with regard to OVs 11 and 12. Concerning its scoring decision on OV 13, the trial court explained:

> The reason why I came with that is that, he was charged with aiding and abetting, with the so-called accomplice, who did the sexual act, and then he was—he had two himself, that he was charged with.
>
> So, I think that that would support that. The offense was part of a pattern of—in other words, although he had—the facts how, initially, when the—at least the two of them, or three, however many there was, that he aided and abetted that, and then he did it himself. And then he came back and he did, he raped her again.
>
> So, that's three offenses. That's where I came with that.

The resolution of this issue revolves around the relationship between OVs 11, 12, and 13. This Court has stated that the interplay of these variables, "strongly suggest[s] that the

---

[1] To the extent defendant argues that the trial court abused its discretion when it denied his motion for a new trial, we find that, given our conclusion that defendant's ineffective assistance of counsel claim was meritless, the trial court's denial of defendant's motion did not constitute an abuse of discretion. See *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012).

Legislature intended trial courts to first score criminal acts under OV 11, then under OV 12, and finally under OV 13." *People v Bemer*, 286 Mich App 26, 35 n 5; 777 NW2d 464 (2009).

## A. OV 11

MCL 777.41 provides:

(1) Offense variable 11 is criminal sexual penetration. Score offense variable 11 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) two or more criminal sexual penetrations occurred ……………………… 50

(b) one criminal sexual penetration occurred ………………………………… 25

(c) no criminal sexual penetration occurred …………………………………. 0

(2) All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense.

The trial court did not err in assessing 25 points under OV 11. In this case the sentencing offense was defendant's first-degree CSC conviction (accomplices), i.e., his conviction for penetrating the victim while the unknown assailant held the victim. Defendant argues that MCL 777.41(2)(c) prohibited the trial court from taking into account his subsequent sexual penetration of the victim, since that penetration formed the basis of his other first-degree CSC conviction. However, this Court rejected that argument in *People v McLaughlin*, 258 Mich App 635, 676; 672 NW2d 860 (2003). In that case, this Court, after extended analysis of MCL 777.41, held: "trial courts are prohibited from assigning points for the one penetration that forms the basis of a first-or third-degree CSC offense that constitutes the sentencing offense, but are directed to score points for penetrations that did not form the basis of the sentencing offense." *Id*. Following this rule in the present case, the trial court was not precluded from assessing 25 points for the penetration that occurred when defendant returned to the victim's apartment after the first assault.

Nonetheless, for that penetration to be assessed under OV 11, it must have "aris[en] out of the sentencing offense." MCL 777.41(2)(a). Defendant argues that the two penetrations "occurred during two separate incidents that were different in time and character . . . ." "[A]rising out of," as used in MCL 777.41(2)(a), means " 'springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen.' " *People v Johnson*, 298 Mich App

128, 132; 826 NW2d 170 (2012), quoting *People v Johnson*, 474 Mich 96, 101; 712 NW2d 703 (2006). "[T]his standard requires more than the mere fact that the penetrations involved the same defendant and victim." *Johnson*, 298 Mich App at 132.

In the present case, the trial court did not clearly err in determining that defendant's second penetration arose out of the first. The first sexual assault had "a cause and effect relationship, of more than an incidental sort" with the second sexual assault. See *Johnson*, 474 Mich at 101. Defendant, who did not have a preexisting relationship with the victim, came over to her apartment, uninvited, and sexually assaulted her. Shortly thereafter, defendant returned, forced his way into the victim's apartment, and sexually assaulted her once again. These assaults were more than merely incidentally related, as they occurred in the same place, on the same night, and under similar circumstances. See *Johnson*, 474 Mich at 100. The trial court did not err by scoring 25 points under OV 11.

B. OV 12

MCL 777.42 provides:

(1) Offense variable 12 is contemporaneous felonious criminal acts. Score offense variable 12 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) three or more contemporaneous felonious criminal acts involving crimes against a person were committed ……………………………………………..... 25

(b) two contemporaneous felonious criminal acts involving crimes against a person were committed ………………………………………………………… 10

(c) three or more contemporaneous felonious criminal acts involving other crimes were committed ………………………………………………………………… 10

(d) one contemporaneous felonious criminal act involving a crime against a person was committed ………………………………………………………...…… 5

(e) two contemporaneous felonious criminal acts involving other crimes were committed ……………………………………………………………………….. 5

(f) one contemporaneous felonious criminal act involving any other crime was committed ………………………………………………………………………….. 1

(g) no contemporaneous felonious criminal acts were committed ……………..... 0

(2) All of the following apply to scoring offense variable 12:

(a) A felonious criminal act is contemporaneous if both of the following circumstances exist:

(*i*) The act occurred within 24 hours of the sentencing offense.

(*ii*) The act has not and will not result in a separate conviction.

(b) A violation of section 227b of the Michigan penal code, 1931 PA 328, MCL 750.227b, should not be considered for scoring this variable.

(c) Do not score conduct scored in offense variable 11.

Defendant argues that the trial court should have assessed five points under this variable based on his aiding and abetting of the unknown accomplice and that such a score should have precluded the trial court from scoring the same conduct under OV 13. The prosecutor agrees that the trial court should have scored points under OV 12 rather than OV 13, but disagrees on the number of points. The prosecutor asserts that OV 12 should have been scored at ten points, contending that there were two contemporaneous felonious acts that have not and will not result in separate convictions. The prosecutor argues that the two contemporaneous felonies acts were: (1) defendant's aiding and abetting the unknown individual in sexually assaulting the victim; and (2) engaging in a separate assault with intent to commit sexual penetration in the form of oral sex.

We agree with defendant that OV 12 should have been scored at five points. At the outset, it is clear that the trial court was not permitted to assess points under this variable for defendant's convictions. MCL 777.42(2)(a)(*ii*). The only other contemporaneous felonious act that is supported by a preponderance of the evidence was defendant's aiding and abetting of the unknown accomplice in sexually assaulting the victim. The conduct occurred within 24 hours of the assault, MCL 777.42(2)(a)(*i*), has not resulted in a separate conviction, and there is no indication to suggest that it will result in a separate conviction, MCL 777.42(2)(a)(*ii*).

Contrary to the prosecution's assertions, neither the victim's testimony nor the PSIR support by a preponderance of the evidence the prosecution's contention that defendant attempted to engage in oral sex with the victim. The record evidence does not sufficiently support such a finding. Accordingly, defendant should have been assessed five points under OV 12 for aiding and abetting the unknown individual.

Rather than scoring the aiding and abetting conduct under OV 12, the trial court scored it under OV 13. The trial court erred by doing so. "The sentencing guidelines are a comprehensive and integrated statutory scheme designed to promote uniformity and fairness in sentencing." *Bemer*, 286 Mich App at 34. "For that reason, the individual sentencing variables cannot be read in isolation, but instead must be read as a harmonious whole." *Id.* at 34-35. OV 13 directs the trial court to score points for a "continuing pattern of criminal behavior." MCL 777.43(1). Significantly, the offense variable permits a score of 25 points where "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1). "Typically, there is nothing to preclude a particular factor—in this case, criminal conduct—from serving as the basis underlying the scoring of multiple variables." *Bemer*, 286 Mich App at 35. However, MCL 777.43 contains an express provision prohibiting criminal conduct that was already scored under OV 11 or 12 from being scored under OV 13. The offense variable limits the felonious criminal activity that may be scored by expressly precluding "conduct scored in offense variable 11 or 12" that is not related to membership in an organized criminal group or that are gang-related. MCL 777.43(2)(c). This provision, construed

in context of the requirements that OV 12 is to be scored *before* OV 13 and that the trial court cannot, when scoring OV 13, "consider any conduct that was or *should have been* scored under" OV 12, *Bemer*, 286 Mich App at 35, required the trial court in this case to score defendant's uncharged act of aiding and abetting the unknown assailant under OV 12, not under OV 13. Therefore, defendant correctly recognizes that his conduct of aiding and abetting the unknown assailant should have been scored under OV 12, and not under OV 13. As such, the trial court erred in relying on this conduct in scoring OV 13, and the court's scoring decision with regard to OV 13 can only be upheld if, absent defendant's conduct of aiding and abetting the unknown assailant, there are three or more felonious acts involving crimes against a person. As discussed below, there are not three such acts in this case.

## C. OV 13

MCL 777.43 provides:

(1) Offense variable 13 is continuing pattern of criminal behavior. Score offense variable 13 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) the offense was part of a pattern of felonious criminal activity involving three or more sexual penetrations against a person or persons less than thirteen years of age ………………………………………………………………………… 50

(b) the offense was part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang ………………………………………….....… 25

(c) the offense was part of a pattern of felonious criminal activity involving three or more crimes against a person ………………………………………………... 25

(d) the offense was part of a pattern of felonious criminal activity involving a combination of three or more crimes against a person or property or a violation of MCL 333.7401(2)(a)(i)-(iii) or MCL 333.7403(2)(a)(i)-(iii) …………..……… 10

(e) the offense was part of a pattern of felonious criminal activity involving a combination of three or more violations of MCL 333.7401(2)(a)(i)-(iii) or MCL 333.7403(2)(a)(i)-(iii) …………………………………………………….. 10

(f) the offense was part of a pattern of felonious criminal activity involving three or more crimes against property ……………………………………....…….. 5

(g) no pattern of felonious criminal activity existed ………………..………… 0

(2) All of the following apply to scoring offense variable 13:

(a) For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.

(b) The presence or absence of multiple offenders, the age of the offenders, or the degree of sophistication of the organized criminal group is not as important as the fact of the group's existence, which may be reasonably inferred from the facts surrounding the sentencing offense.

(c) Except for offenses related to membership in an organized criminal group or that are gang-related, do not score conduct scored in offense variable 11 or 12.

(d) Score 50 points only if the sentencing offense is first degree criminal sexual conduct.

(e) Do not count more than 1 controlled substance offense arising out of the criminal episode for which the person is being sentenced.

(f) Do not count more than 1 crime involving the same controlled substance. For example, do not count conspiracy and a substantive offense involving the same amount of controlled substances or possession and delivery of the same amount of controlled substances.

The prosecution concedes that the trial court erred in assessing 25 points under OV 13, and we agree. Under MCL 777.43(2)(c), the trial court was not permitted to take into account defendant's second CSC conviction, since it was assessed in OV 11, and it was not permitted to take into account defendant's aiding and abetting of the unknown accomplice, since it was assessed in OV 12. The only remaining felonious activity was the sentencing offense and the home invasion. Defendant's presentence investigation report does not contain any other offenses against a person that could be scored under MCL 777.43(1)(c). With only two assessable crimes, the trial court's decision to score 25 points pursuant to MCL 777.43(1)(c) was erroneous.

With 5 points assessed under OV 12 and without 25 points assessed under OV 13, defendant's OV Level would have decreased from 75 points to 55 points, dropping defendant from OV Level IV to OV Level III. See MCL 7776.62. His minimum sentence range would therefore have been 126 to 210 months rather than 135 to 225 months, MCL 777.62, and the minimum sentence imposed by the trial court—216 months—is outside of the appropriate range. Because defendant's recommended minimum guidelines range would have changed, he is entitled to resentencing on his first-degree CSC offense. *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006).

## IV. ASSERTION OF INNOCENCE

Finally, defendant argues that the trial court erroneously relied on his assertion of innocence at sentencing to impose consecutive sentences. This Court reviews a trial court's decision to impose consecutive sentences for an abuse of discretion. *People v St John*, 230 Mich App 644, 646; 585 NW2d 849 (1998). "A trial court abuses its discretion when it chooses an

outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

"In Michigan, concurrent sentencing is the norm, and a court may impose consecutive sentences only if authorized by statute." *St John*, 230 Mich App at 646. MCL 750.110a(8) provides, "The court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

At sentencing, the trial court asked defendant, "Anything you want to say?" The following colloquy then took place:

> *Defendant.* Yes, I feel like I was wrong, wrongfully convicted of this, you know, these allegations off of false statements, and you know, lies.
> And—
>
> *The court.* So, you continue to say that this lady agreed for you and your friend to come in and rape her?
> Okay.
> You have the right to say what you need to say, sir.
> Okay.
>
> *Defendant.* I, I just feel like I was wrongfully convicted, you know.
> I feel like off [sic] the inconsistencies that were stated, you know, I don't feel that it was, it was right.
>
> *The court.* Well, that's your opinion, sir.
> But I watched that lady on the witness stand, and all of the circumstances that were here, and I have no doubt in my mind about this.
> Why would she have you and your friends come in and, and rape her, and then you come back in and do it again?
> Okay?
> I'm not gonna go through any kind of discussion or discourse about that.
> That's the way you feel, and you have a right to appeal your conviction to a higher Court.
> Anything more you want to say, sir?
>
> *Defendant.* No.

When the trial court later imposed its sentence, it stated that it was going to make defendant's first-degree CSC sentences concurrent to each other, but consecutive to the first-degree home invasion conviction:

> I may have thought about this differently, until I was listening, you know, to him, there still standing there, talking about he was wrongly convicted, and this was all consensual, and all of those kind of things.
>
> And I think that he is a true danger to society.

-10-

He's on, he's on parole. He didn't respect that.

And then go and commit these crimes.

For home invasion, I will sentence the defendant to a minimum of ten years, and a maximum of twenty years.

For each of the sexual assault cases, I'm gonna sentence him a minimum of eighteen years, and a maximum of thirty-five years.

And that is to be consecutive to the home invasion, as is allowed by law.

"A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). However, the trial court is not precluded from considering the defendant's lack of remorse, which "can be considered in determining an individual's potential for rehabilitation." *Id.* "To determine whether sentencing was improperly influenced by the defendant's failure to admit guilt, this Court focuses on three factors: '(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.' " *Id.*, quoting *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). " '[I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence.' " *Dobek*, 274 Mich App at 104, quoting *Wesley*, 428 Mich at 713 (alteration in original). "Resentencing is required only if it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did." *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003).

Applying the three factors, first, it does not appear that defendant unequivocally maintained his innocence. Rather, he stated that he believed that he was "wrongfully convicted" because of "these allegations off of false statements, and, you know, lies[,]" and the "inconsistencies." Defendant did not claim that he was innocent, but rather criticized the quality of the evidence against him. Nonetheless, the trial court clearly interpreted these statements as defendant implying that the sexual intercourse between defendant and the victim was consensual, and that defendant was therefore maintaining his innocence.

Regarding the second factor, it does not appear that the trial court encouraged defendant to admit guilt. Rather than encouraging defendant to confess his guilt, the trial court informed defendant, after appearing astonished at defendant's assertion that he had been wrongfully convicted, that "[y]ou have the right to say what you need to say, sir." The trial court expressed surprise at defendant's remarks, but did not press defendant for an admission of guilt, instead informing defendant, "I'm not gonna go through any kind of discussion or discourse about" defendant's belief that he was wrongfully convicted. Further, even after stating that it believed the victim's testimony, the trial court did not press defendant for an admission, instead stating, "[t]hat's the way you feel, and you have a right to appeal your conviction to a higher court." Instead of encouraging defendant to admit his guilt, the trial court simply appears to have been

incredulous that defendant was, in its view, maintaining his innocence in the face of the evidence at trial.

As to the third factor, it does not appear to us that if defendant had admitted his guilt, the trial court would have imposed a lighter sentence. The trial court seemed taken aback at what it perceived to be defendant's assertion of innocence. However, there is no undeniable link between defendant's statements at sentencing and the trial court's sentence, including its decision to impose consecutive sentences under MCL 750.110a(8). For example, the trial court did not say that it was imposing consecutive sentences because of defendant's statements at sentencing. In addition, the trial court appeared to be concerned with other factors, such as defendant's lack of remorse. The court also expressed worry that defendant would be a continued threat to society. And, the trial court referenced the fact that defendant had committed the instant offense while on parole, and that defendant "didn't respect" his parole. As stated above, "[r]esentencing is required only if it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did." *Spanke*, 254 Mich App at 650. Upon our review, it is not apparent that defendant's failure to admit guilt influenced the trial court. Rather, it is more apparent that the trial court was concerned with defendant's lack of remorse, his lack of respect for the conditions of parole, and its conclusion that, in light of all of the factors, defendant presented a danger to society. These considerations were proper. See *id.* (explaining that a "sentencing court may consider evidence of a lack of remorse . . . .").

## IV. CONCLUSION

We affirm defendant convictions and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

-12-