# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

                    Plaintiff-Appellee,

v

ROBERT ANTHONY RICKS,

                    Defendant-Appellant.

UNPUBLISHED
April 12, 2018

No. 336498
Wayne Circuit Court
LC No. 16-000206-01-FC

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of first-degree premeditated murder, MCL 750.316(1)(a). The trial court sentenced defendant to mandatory life imprisonment. We affirm.

Defendant was convicted of the murder of his father-in-law. The two traveled together to New York City on February 21, 2014. Defendant's father-in-law disappeared that day and remained missing until approximately one month later, when his body was found in an abandoned lot in Detroit. The victim had been stabbed 25 times, and his death was ruled a homicide.

Defendant argues on appeal that insufficient evidence was presented at trial to identify him as the perpetrator of the crime. We disagree.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id*.

First-degree premeditated murder is defined as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." *People v Oros*, 320 Mich App 146, 153; 904 NW2d 209 (2017), quoting MCL 750.316(1)(a). "In order to convict a defendant of first-degree premeditated murder, the prosecution must first prove that the defendant intentionally killed the victim." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). The prosecution must next prove that the killing was either willful or deliberate *and* premeditated. *Oros*, 320 Mich App at 153-154. "Premeditate" means to think about beforehand or to consciously consider and plan before carrying out an act. *Id*. at 154. In other words,

premeditation and deliberation, for purposes of a first-degree murder conviction, require "sufficient time to allow the defendant to take a second look." *People v Orr*, 275 Mich App 587, 591; 739 NW2d 385 (2007), quoting *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). As "identity is an element of every offense," *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008), the prosecutor must also establish that the defendant was the person who committed the crime.

Defendant primarily argues that he cannot be positively identified as the perpetrator because there were no eyewitnesses to the crime, and because no physical evidence, such as fingerprint or DNA evidence, was presented to the jury. Defendant contends that the lack of direct or physical evidence connecting him to the crime means that he cannot be convicted of first-degree premeditated murder. However, "[c]ircumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004) (quotation and citation omitted).

In this case, the victim had been a resident of Baltimore, Maryland. The defendant was estranged from the victim's daughter (his wife), Mary Banks, on February 21, 2014. According to Banks, defendant was supposed to take a bus back to Detroit that day, where the two had previously lived and still maintained an apartment while she remained at her parents' home in Baltimore. The victim disappeared on February 21, 2014, and defendant initially told Banks that he had not seen her father since that morning in Baltimore, but thought he may have gone to a hospital. Surveillance video, however, showed defendant and the victim leaving the victim's condominium together that morning and going to a pawn shop.

Information gleaned from the victim's and defendant's cell phone records showed that defendant and the victim's cell phone signals were both initially in the Baltimore area, then moved through Delaware and New Jersey, before coming to a stop in New York City on the evening of February 21, 2014. When the victim's cell phone moved again it began communicating with cell towers along a route toward Jersey City, New Jersey, and his cell phone signal came to a stop near a landfill. Defendant's cell phone signal moved on from New York City and came to a stop in Detroit in the early morning hours of February 22, 2014. There was no explanation given regarding how or why the victim's cell phone last communicated with a cell tower near a New Jersey landfill, hundreds of miles away from where his body was eventually found in Detroit. The above presents circumstantial evidence that defendant and the victim were together all through February 21, 2014, and that when the victim's cell phone stopped communicating that day, defendant's continued to Detroit, where the victim's body was eventually found.

Circumstantial evidence of premeditation and deliberation can be established through consideration of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Orr*, 275 Mich App at 591. With regard to the first consideration, defendant and the victim had a prior relationship with each other, the victim being defendant's father-in-law, and there was no evidence that defendant and the victim had a poor relationship or that there was any animosity between them. Defendant stated that he "was in love with [the victim]," and the two men had traveled to Detroit together on a prior occasion shortly before the victim's

disappearance. Thus, the prior relationship between defendant and the victim did not reveal any grounds for a finding of premeditation.

As to the second consideration, although the exact date of the victim's death is unknown, defendant's actions on the day that the victim disappeared indicated that he attempted to conceal what he knew about the victim's whereabouts, particularly from his estranged wife. According to Banks, defendant told her a number of factually inconsistent stories about where the victim was and about what happened the last time that defendant saw him. Initially, defendant told Banks that he thought the victim went to a hospital on the morning of February 21, 2014, because he had been feeling sick, and had no idea where the victim had gone after that. At another point, defendant admitted that he and the victim had gone to New York City, but that the two had then gone their separate ways at the bus station. "Conflicting statements, when considered together with the other circumstantial proofs . . . lend further evidence from which a rational jury could have inferred defendant's guilt." *Unger*, 278 Mich App at 226.

As to the third consideration, the circumstances of the killing demonstrate premeditation. The victim's body was found in a secluded location, on an abandoned lot, where it was not likely to be discovered. The fact that the body was found in a remote, concealed location indicates that either the victim was lured to that location and murdered there, or that the perpetrator dumped the body there in an attempt to cover up the crime. See *People v Johnson*, 460 Mich 720, 733; 597 NW2d 73 (1999) (finding that evidence that the perpetrator lured his victim to a secluded area can indicate premeditation). Further, defendant's cell phone communicated with a tower near the crime scene in the afternoon hours of February 22, 2014, the day after the victim went missing. This indicated that, immediately after the victim disappeared, defendant was at or near the area where the victim's body was eventually found. In addition, the victim had been stabbed 25 times. While the brutality of a killing, *alone*, is not sufficient to establish premeditation, when taken with other circumstantial evidence, it plays into the analysis surrounding premeditation. See, e.g. *Orr*, 320 Mich App at 158.

Finally, in relation to the fourth consideration, defendant's behavior following the victim's disappearance was unusual and suggestive of a consciousness of guilt. Banks told defendant that she had called the police and filed a missing person report regarding the victim, and in the weeks that followed, defendant fled the state, and attempted to board a plane using a stolen boarding pass in Birmingham, Alabama. He was arrested, and subsequently provided a false name to the FBI. In the context of premeditation, " 'evidence of flight is admissible to support an inference of consciousness of guilt . . . .' " *Unger*, 278 Mich App at 226 (citation omitted). The evidence that defendant fled the state and committed a federal crime in order to do so "could have allowed reasonable jurors to infer that defendant had a guilty state of mind." *Id*. "[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *Id.*

Additionally, while the victim was missing, defendant continually tried to reunite with Banks but she told him he could not return until her father came home. When Banks told him in October 2104 that the victim had been found, murdered, defendant told her that "maybe some good can come of it. I can come back home." He also wanted to know how the police identified the victim's body.

The jury may " 'believe or disbelieve, in whole or in part, any of the evidence presented at trial.' " *Id*. at 228 (citation omitted). This Court defers to the jury's judgment of the evidence, because " '[j]uries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony.' " *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992) (citation omitted). When viewing the evidence in the light most favorable to the prosecutor, sufficient evidence existed to allow a jury to determine that defendant was the perpetrator of the crime and that he murdered the victim with premeditation.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell