*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 10, 2020

Plaintiff-Appellee,

v

No. 346983
Kent Circuit Court
LC No. 17-010977-FH

QUINN ANTHONY JAMES,

Defendant-Appellant.

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Quinn James, appeals as of right his jury trial convictions of four counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(a) (victim between 13 and 15 years of age). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In November 2017, Mujey Dumbuya disclosed to a school counselor and a police officer that she had been sexually assaulted by James.[1] Dumbuya stated that the first incident occurred in July 2017, and involved James penetrating her vagina with his penis while she was in the backseat of his vehicle. Then, in August 2017, he again sexually assaulted her in the backseat of a different vehicle. She stated that on that occasion he penetrated her vagina with his penis, his tongue, and his fingers. Dumbuya also recounted that in September 2017, James took her to an empty apartment and penetrated her vagina with his tongue and fingers. Dumbuya stated that each time

---

[1] Dumbuya was murdered before James's trial in this case, so she could not directly recount the sexual assaults to the jury. Instead, the school counselor and the police officer testified as to what she told them when she disclosed the abuse. The jury was told that Dumbuya was deceased, but were not given any details of her death.

she was sexually assaulted Daquarius Bibbs was also present.[2]  At trial, Bibbs testified that he saw James have vaginal sex with Dumbuya on two occasions, that he watched James have oral sex with Dumbuya in an empty apartment, and that he was present when James "put his penis in" Dumbuya while they were at James's house.[3]  Finally, during a police interview, James admitted to having both oral and vaginal sex with Dumbuya in the summer of 2017.

At trial, the prosecution argued that James was guilty of four counts of CSC-III, either because Dumbuya was 15 years old when he sexually assaulted her or because he used force or coercion when sexually assaulting her.  The jury found that Dumbuya was 15 years old, and convicted James under MCL 750.520d(a), and the charges relating to force or coercion were dismissed.

This appeal follows.

## II.  ADMISSION OF EVIDENCE

### A.  STANDARD OF REVIEW

James argues that the trial court abused its discretion by admitting Dumbuya's birth certificate into evidence.  We review for an abuse of discretion the trial court's decision to admit evidence.  *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).  "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes."  *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

### B.  ANALYSIS

Dumbuya was born in Sierra Leone.  Her maternal aunt explained that at the time Sierra Leona "was in a war crisis," so Dumbuya was not born at a hospital.  Dumbuya's aunt added that there was disarray in the Sierra Leone government when Dumbuya was born.  She said that young children were being conscripted into the army and forced to fight, and she stated that there were people going around raping, murdering, and otherwise committing atrocities.  In 2005, Dumbuya's family applied for her birth certificate.  Dumbuya's aunt explained that they received the document from Sierra Leone, and that it was a required document for Dumbuya to come to the United States as a refugee.  Between 2005 and 2006, Dumbuya, her mother, and her aunt entered the United States as refugees.

---

[2] Bibbs is James's girlfriend's nephew.  In his police interview, James explained that in the summer of 2017, Bibbs was staying with his aunt and James.

[3] Bibbs testified that he was also having sex with Dumbuya when he was 17 years old and she was 15 years old.  He was given immunity from prosecution in exchange for his testimony.

At trial, the prosecution sought to admit Dumbuya's birth certificate as proof that she was 15 years old when James had sex with her. James's lawyer objected, challenging the authenticity of the document. He challenged the dates listed on the birth certificate[4] and argued that, given the "nature of Sierra Leone as a county," the document should not be considered self-authenticating. He added that "[a]nybody in their garage in the middle 2000s could have made that document." The trial court, however, determined that as a foreign public document, the birth certificate was self-authenticating under MRE 902(3), and it found that James's lawyer's arguments went to the weight of the evidence, not to admissibility.

On appeal, James argues that the trial court erred by holding that Dumbuya's birth certificate was self-authenticating under MRE 902(3). MRE 902(3) provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> * * *
>
> (3) **Foreign Public Documents.** A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certificate as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. . . .[5]

---

[4] The birth certificate states that Dumbuya was born on November 8, 2001 and that the event was registered in the Register of Births in the Republic of Sierra Leone on April 12, 2005, but it also included a notation of "BC/2002."

[5] MRE 902(3) also provides that a foreign public document may be considered presumptively authentic under certain circumstances:

> If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

On appeal, James argues that a reasonable opportunity was not given to investigate the authenticity and accuracy of the birth certificate and that "good cause" was not shown. The court, however, did not conclude that the document was presumptively authentic. Instead, the court determined that it was admissible under the first part of the court rule. Therefore, we need not determine

In order to ascertain whether a foreign public document is self-authenticating under the first part of MRE 902(3), the court must ascertain if the document purports "to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation." Dumbuya's birth certificate is signed by the Chief Registrar of Sierra Leone's Ministry of Health and Sanitation, who attested in his official capacity that the document certifying Dumbuya's birth was registered on Page 155, Number 0155 of the Register of Births of the Republic of Sierra Leone on April 12, 2005. Thus, the first requirement is satisfied.

Next, the court rule requires that the document be "accompanied by a final certificate as to the genuineness of the signature and official position (A) of the executing or attesting person . . . ." MRE 902(3). James argues on appeal that there is no "final certification [of] genuineness" on Dumbuya's birth certificate. The phrase "final certification of genuineness" does not appear on Dumbay's birth certification. Yet, the court rule does not mandate that the exact phrase "final certification of genuineness" appear in order for the foreign public document to be considered self-authenticating. Instead, there must be something on the document to certify that both the signature and official position of the attesting (or executing) person is genuine. In this case, the attesting person is the Chief Register of Sierra Leone's Ministry of Health and Sanitation. His official position is identified on the birth certificate below his signature. In addition, the official seal of the Office of the Registrar of Births and Deaths is affixed to the document. The presence of the seal certifies the genuineness of the signature and official position of the Chief Register. Accordingly, the second requirement for a foreign public document to be considered self-authenticating is satisfied in this case. The trial court did not abuse its discretion by admitting Dumbuya's birth certificate as a self-authenticating foreign public document under MRE 902(3).

Moreover, even if the court abused its discretion by admitting the birth certificate as self-authenticating under MRE 902(3), the birth certificate was properly authenticated under MRE 901(a). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). An example of authentication or identification that conforms to the requirements of MRE 901(a) is "[t]estimony that a matter is what it is claimed to be." MRE 901(b)(1). Here, Dumbuya's mother and her maternal aunt both identified Dumbuya's birth certificate as her official birth certificate. Dumbuya's aunt testified that the document came from the Sierra Leone government after an application of a late or delayed birth certificate was submitted in 2005. Their testimony came from personal knowledge that the birth certificate was, in fact, what is purported to be: Dumbuya's birth certificate. Thus, the document was authenticated under MRE 901(a), even if it was not self-authenticating under MRE 902(3).

Affirmed.

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly

whether this alternative method of admitting a foreign public document would have been permitted in this case.

-4-