# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 17, 2015

Plaintiff-Appellee,

v

No. 319302
Wayne Circuit Court
LC No. 13-000116-FC

JAMES LONNIE BLAYLOCK,

Defendant-Appellant.

Before: DONOFRIO, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Defendant, James Lonnie Blaylock, appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1]  Defendant fatally shot the victim, Kevin Wheeler, in front of several witnesses.  Defendant was sentenced to life imprisonment for first-degree murder and two years for felony-firearm.  We affirm.

## I.  SUFFICIENCY OF THE EVIDENCE

## A.  STANDARD OF REVIEW

Defendant first contends that the evidence was insufficient to support his conviction for first-degree premeditated murder.  We review "de novo a challenge on appeal to the sufficiency of the evidence."  *People v Ericksen,* 288 Mich App 192, 195; 793 NW2d 120 (2010).  "In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to take the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt."  *People v Tennyson,* 487 Mich 730, 735; 790 NW2d 354 (2010) (quotations marks and citations omitted).  "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses."  *People v Unger,* 278 Mich App 210, 222; 749 NW2d 272 (2008).

---

[1] These convictions resulted from defendant's second trial.

## B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Premeditation and deliberation require a sufficient passage of time to permit the defendant to take a second look. *People v Orr*, 275 Mich App 587, 591; 739 NW2d 385 (2007). Premeditation and deliberation can be established through: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Id.* (quotation marks and citation omitted). The time required between the intent and the ultimate killing "need only be long enough to allow the defendant to take a second look." *Unger*, 278 Mich App at 229 (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences drawn from the evidence may constitute satisfactory proof of premeditation and deliberation." *Id.*

According to eyewitness Shayla Pickens, Luther Woortham, and Greay Perry, defendant walked over to the victim's house, knocked on the door, and shot the victim. Defendant's decision to kill the victim was not spur-of-the-moment. Defendant had previously told Timothy Landrum that he wanted to use the victim's house to sell drugs and wanted to get the victim "out of there." On appeal, defendant concedes that he told Landrum he wanted to rob and shoot the victim. After defendant shot and killed the victim, he called Landrum. Landrum asked defendant what he did, and defendant replied that he could not take it anymore and that he did what he had to do. Moreover, bringing a handgun to the victim's front door is further proof of defendant's premeditated intent to kill the victim. Use of a deadly weapon establishes premeditation "where circumstances show a motive or plan that would enable the trier of fact to infer that the killing was not a spur-of-the-moment decision." *People v Plummer*, 229 Mich App 293, 305; 581 NW2d 753 (1998).

Defendant contends that his dispute with the victim proved that the shooting was the result of a hot-bloodied altercation rather than a premeditated or deliberate killing. However, this argument ignores defendant's stated desire to oust the victim from the house and defendant's admission that he could not take it anymore. See, e.g., *Unger*, 278 Mich App at 231 (evidence of discord between the parties is admissible to show premeditation and deliberation). Further, defendant shot the victim immediately after he opened the door. No one testified that the victim took any provocative action toward defendant. Defendant also fired as many as six shots at the victim. After killing the victim, defendant had the presence of mind to leave the scene promptly. Thus, the jury could reasonably conclude that defendant was not in an extreme emotional state during the incident, but instead acted with premeditation and deliberation.

Defendant's conviction for first-degree premeditated murder was supported with sufficient evidence.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

## A. STANDARD OF REVIEW

Defendant next contends that his trial counsel rendered ineffective assistance of counsel in several respects. Whether a defendant received effective assistance of counsel is a mixed

question of fact and law, as a "trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). When reviewing a claim of ineffective assistance of counsel that has not been preserved for appellate review, a reviewing court is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

## B. ANALYSIS

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden to prove otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). To establish a claim for ineffective assistance of counsel, a defendant first must establish that "counsel's representation fell below an objective standard of reasonableness." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted); see also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Second, the defendant must show that trial counsel's deficient performance prejudiced his defense, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich at 669 (quotation marks and citation omitted); see also *Strickland*, 466 US at 687. A defense counsel's failure to move to suppress evidence may be sound trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012).

Defendant contends that his trial counsel should have sought suppression of the in-court identifications from witnesses Woortham and Perry, who witnessed the crime from a nearby demolition site. Defendant claims error because these two witnesses failed to identify him during a pretrial lineup, but later identified him at trial when he was seated with defense counsel.[2] Defendant also highlights the fact that he was African American, while his defense counsel was Caucasian, and that this somehow contributed to the in-court identifications.

"The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). Here, defendant has not argued that there was anything improper or unduly suggestive in the pretrial lineup. Instead, his argument is premised on the fact that the two witnesses failed to identify him at the pretrial lineup, but did so at trial when his identity as the defendant was made obvious. Yet, "[t]he fact that [the witnesses] did not identify defendant at the lineup did not render [their] subsequent in-court identification inadmissible. Rather, this was a credibility issue that was properly before the jury to determine." *Barclay*, 208 Mich App at 675-676. See also *People v McElhaney*, 215 Mich App 269, 287; 545 NW2d 18 (1996). Further, in not seeking the exclusion of this evidence, defense counsel was able to emphasize to the jury that the witnesses were unable to identify him during the lineup, which undermined their testimony and credibility. See *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) ("a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."); *Heft*, 299 Mich App at 83. Defendant has

---

[2] They identified another individual in the lineup.

not demonstrated that his counsel's representation fell below an objective standard of reasonableness. *Vaughn*, 491 Mich at 669.

Moreover, "[t]o establish that he was prejudiced by the failure of his counsel to object to these identifications, defendant would have to show that there was a reasonable probability of a different outcome." *People v Whitfield*, 214 Mich App 348, 351; 543 NW2d 347 (1995). Here, the third eyewitness—Pickens—knew defendant for almost 20 years, and was able to independently identify him as the perpetrator. Landrum also testified that defendant and the victim were selling drugs out of the house, defendant asked Landrum for help in removing the victim from the house, and after the shooting defendant called Landrum and confessed that he did what he had to do. Defendant has not established that but for counsel's alleged error, the result of the trial would have been different. *Vaughn*, 491 Mich at 669.

In his Standard 4 brief, defendant also contends that his counsel was ineffective for failing to investigate evidence of phone records and "cell phone GPS for location." Defendant also suggests that his trial counsel failed to interview alibi witnesses. "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. Similarly, the failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks, brackets, and citations omitted).

There is no record evidence that defendant asked his counsel to investigate or obtain cell phone records, GPS information, interview other witnesses, or present any kind of an alibi defense.[3] As the United States Supreme Court has recognized: "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." *Strickland*, 466 US at 691. Thus, defendant has not demonstrated that his counsel acted unreasonably. Moreover, defendant has produced no evidence that any further investigation would have produced evidence helpful to the defense, or evidence that would have undermined the outcome of the trial. See *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) ("A substantial defense is one that might have made a difference in the outcome of the trial." (Quotation marks and citation omitted)).

Defendant further contends that his counsel dissuaded him from requesting a bench trial, stating that the trial judge would likely find him guilty of second-degree murder. However, even if defendant informed his counsel that he preferred a bench trial, and even if defense counsel advised against it, there is nothing to suggest that counsel's advice was unreasonable. The decision to recommend a jury or bench trial generally is a matter of strategy, best left to the discretion of counsel. See *People v Davenport (After Remand)*, 286 Mich App 191, 197; 779 NW2d 257 (2009) (defense counsel's recommendation to waive a jury trial is a matter of trial strategy). Especially in this case, with overwhelming evidence of defendant's guilt, it was not

---

[3] At a pretrial hearing on September 27, 2013, defense counsel informed the court that he intended to hire an investigator to interview unnamed witnesses. No further elaboration was provided.

unreasonable for defense counsel to conclude that defendant might be better served with a jury as opposed to the trial judge.[4]  As such, defendant was not denied the effective assistance of counsel.

### III.  PROSECUTORIAL MISCONDUCT

### A.  STANDARD OF REVIEW

Also in his Standard 4 brief, defendant contends that the prosecution committed misconduct when eliciting false testimony from Pickens and Desi Smith.  Because defendant did not assert this below, this issue is unpreserved.  *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).  "Unpreserved issues are reviewed for plain error affecting substantial rights."  *Id.*  Moreover, if a curative instruction would have alleviated any prejudicial effect of prosecutorial misconduct, it cannot be deemed reversible error.  *Id.* at 476.

### B.  ANALYSIS

A prosecutor may not secure a conviction through the knowing use of false testimony. *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001).  "Prosecutors therefore have a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath."  *Id.* (quotation marks and citation omitted).

Here, defendant claims the prosecutor committed misconduct because Pickens previously testified that she spoke to police on the day of the shooting, but at the second trial testified that she did not talk to them until several days after the murder.[5]  However, at the second trial, it was defense counsel who elicited this evidence, not the prosecution.  Moreover, Pickens explained that she had simply made a mistake regarding when she spoke to the police.  Although defendant implies that Pickens lacked credibility, which undermined the verdict, "[f]undamentally, it is the province *of the jury* to assess the credibility of witnesses."  *People v Young*, 472 Mich 130, 143; 693 NW2d 801 (2005) (emphasis in original).  It was for the jury to decide whether Pickens lacked credibility because of her changed testimony.  "More importantly, there is no indication in the record that, even if [she] testified falsely, the prosecutor knew [she] would testify falsely." *Herndon*, 246 Mich App at 417.

Defendant also suggests that Smith lied about speaking to authorities on the date of the shooting, when he actually spoke to the police two days after the shooting.  On redirect examination, the prosecution inquired into this discrepancy.  Although defendant claims this was improper, allowing a witness to explain an inconsistency during redirect examination is not misconduct.  See *People v Bahoda*, 448 Mich 261, 280; 531 NW2d 659 (1995).  Furthermore, "[a] finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to

---

[4] This is especially true considering the trial court's amazement that defendant's first trial was not a unanimous verdict.

[5] As stated in *supra* note 4, this was defendant's second trial, as the first one ended in a mistrial.

admit evidence." *People v Dobek*, 274 Mich App 58, 76; 732 NW2d 546 (2007). No prosecutorial misconduct occurred.[6]

## IV. DEFENDANT'S DRUG ACTIVITY

### A. STANDARD OF REVIEW

Next, defendant contends in his Standard 4 brief that the trial court erred in admitting Landrum's testimony regarding defendant's involvement in selling drugs. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *Id.* "Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence." *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011).

### B. ANALYSIS

Landrum testified that defendant and the victim used the house to sell drugs and that defendant wanted to get the victim out of the house. Defendant contends that this drug-related testimony was more prejudicial than relevant. We disagree.[7]

Generally, all relevant evidence is admissible at trial. MRE 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, such evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403.

The disputed drug evidence was relevant to prove defendant's premeditation and intent to kill, which are elements of first-degree premeditated murder. *Orr*, 275 Mich App at 591. The testimony also was suggestive of defendant's motive, which is relevant. *Unger*, 278 Mich App at 223 ("Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant."). Nor was the prosecution obliged to provide other evidence to corroborate Landrum's testimony, as that goes to the weight, not admissibility, of the evidence. See MRE 701 (a lay witness is permitted to testify about his opinion if it is rationally based on his perceptions); MRE 602 (a witness may only testify if he has personal knowledge of the subject matter of his testimony).

---

[6] Defendant also points out that the prosecution first asked if Smith spoke to a "detective" but then asked if he spoke with an "officer." Defendant has not explained how such a minor inconsistency prejudiced him. Nor do we find that it rises to the level of prosecutorial misconduct.

[7] We note that in his statement of the questions involved, defendant has characterized this issue as one involving relevancy compared to the prejudicial effect of this evidence, not as a MRE 404(b) issue.

However, defendant contends that that the probative value of this testimony was outweighed by unfair prejudice. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). The Michigan Supreme Court has cautioned that "Rule 403 determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony by the trial judge." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) (quotation marks and citation omitted).

The trial court did not err in finding that the significant probative value of this evidence outweighed any prejudicial effect. As stated *supra*, Landrum's testimony was relevant to demonstrate defendant's motive, premeditation, and intent to kill. Moreover, the relatively limited nature of this evidence made it unlikely that the jurors were stirred "to such passion . . . as to be swept beyond rational consideration of the defendant's guilt or innocence of the crime on trial." *People v Starr*, 457 Mich 490, 503; 577 NW2d 673 (1998) (quotation marks, brackets, and citation omitted). We find no abuse of discretion in the admission of Landrum's testimony.

## V. JUROR MISCONDUCT

### A. STANDARD OF REVIEW

Lastly, defendant contends in his Standard 4 brief that he was denied a fair trial because his brother witnessed the victim's sister speak to a juror. We review unpreserved claims for plain error affecting defendant's substantial rights. *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009).

### B. ANALYSIS

Jurors are presumed to be impartial, unless the contrary is shown. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). "The burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id.* As the Michigan Supreme Court has explained:

> It is well established that not every instance of misconduct in a juror will require a new trial. The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury. . . . A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial. . . . The misconduct must be such as to reasonably indicate that a fair and impartial trial was not had. [*Id.* at 551 (quotation marks, citations, and brackets omitted).]

The only evidence cited in support of defendant's claim is an affidavit from his brother, attached to defendant's Standard 4 brief. This affidavit was not included in the lower court record. Because defendant may not expand the record on appeal, we cannot consider the affidavit. *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Further, the trial court instructed the jurors that it was improper for them to speak with the judge, lawyers, court officers, or any other people involved in the case. Jurors are presumed to follow instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Moreover, "[t]he burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Miller*, 482 Mich at 550. Defendant has not met his burden in this case. Other than general allegations that the victim's sister was attempting to convince the juror of defendant's guilt, and that she was "possibly gaining sympathy," defendant's brother failed to detail any specific comments exchanged during this alleged conversation. Nor is there any evidence that the juror was improperly influenced, or that the rest of the jury was influenced. Because there is no evidence that defendant was denied his right to an impartial jury, he is not entitled to a new trial.

## VI. CONCLUSION

Sufficient evidence supported defendant's conviction of first-degree murder. Moreover, defendant was not denied the effective assistance of counsel, nor were there any instances of prosecutorial misconduct warranting reversal. The trial court properly admitted evidence of defendant's drug activity. Lastly, defendant has not demonstrated that he is entitled to a new trial based on juror misconduct. We affirm.

/s/ Pat M. Donofrio
/s/ Michael J. Riordan
/s/ Michael F. Gadola