# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

GARY EDWARD STORIE,

     Defendant-Appellant.

UNPUBLISHED
May 29, 2018

No. 338377
Wexford Circuit Court
LC No. 2016-011798-FH

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of owning or possessing chemical or laboratory equipment for the manufacture of methamphetamine, MCL 333.7401c(1)(b), possessing methamphetamine, MCL 333.7403(2)(b)(*i*), and operating a motor vehicle with a suspended license, MCL 257.904(1). Defendant was sentenced as a fourth-habitual offender, MCL 769.12, to concurrent prison terms of 48 to 360 months for the methamphetamine-related convictions and 365 days for the operating with a suspended license conviction. We affirm.

On December 13, 2016, Michigan State Police Trooper Misty Long-Birgy performed a traffic stop when defendant ran a stop sign while driving a Ford Explorer. During the stop, defendant admitted that he was driving with a suspended license. After Long-Birgy discovered that defendant had several prior operating-with-a-suspended-license offenses, she placed defendant under arrest and searched him incident to arrest. During the search, Long-Birgy discovered several unused coffee filters, two used coffee filters with a white substance inside, and a hollowed out pen with white residue inside of it. Long-Birgy testified that she knew that coffee filters were often utilized in making methamphetamine, and Trooper Olivia Garlick testified that pens are commonly used to ingest narcotics. When Long-Birgy discovered those items, defendant said, "You got me." At that time, Long-Birgy told defendant that he was under arrest for the possession of suspected methamphetamine.

Long-Birgy also searched the vehicle's passenger, Amber Smith, and found an unused coffee filter on her person. When Long-Birgy asked Smith to step out of the car, she noticed a pair of tin snips in the passenger door, which Long-Birgy testified are commonly used to strip batteries to use the lithium to produce methamphetamine. When troopers searched the vehicle, they found several other components commonly used to make methamphetamine, including a "one pot" reactionary vessel. Samples from the white substance found in the coffee filter and

-1-

from the suspected "one pot" were sent to a forensics lab and tested positive for methamphetamine.

Smith was also charged in connection with this incident, but the charges were dropped and she was given immunity in exchange for her testimony. She testified that she drove defendant around to gather various components required to make methamphetamine and that she witnessed defendant making methamphetamine on December 13, 2016, the date of the car stop. Janice Franks, who was also granted immunity, testified that she bought Sudafed for defendant on December 13 knowing that he would use it to make methamphetamine.

Defendant was convicted as noted above, and this appeal followed.

## I. OTHER-ACTS EVIDENCE

On appeal, defendant argues that the trial court abused its discretion in admitting other-acts evidence under MRE 404(b) because the probative value of the evidence was substantially outweighed by the risk of unfair prejudice and should have been excluded. We agree that the other-acts evidence should not have been admitted but find that the error in its admission was harmless.

The trial court admitted other-acts evidence related to physical evidence that was discovered in an abandoned blue Chevy truck on December 3, 2016. The physical evidence consisted of components that were used in the production of methamphetamine. Smith and another woman, Kimberly Franks,[1] testified that defendant arrived at Kimberly's home in a blue truck on that date. After defendant and Kimberly got into an argument, defendant left in the truck. Defendant returned later that day with no truck and told Smith and Kimberly that his truck had gotten stuck and he "ditched" it. Trooper Long-Birgy testified that she had searched an abandoned blue Chevy truck located near Kimberly's home on December 3, 2016, and discovered components used in the production of methamphetamine, including a cutoff bottle, a gas generator, and lithium batteries, as well as a hypodermic needle with fluid in it that later tested positive for methamphetamine. Long-Birgy also found receipts and registrations with various names on them. One receipt had defendant's name and the truck's license plate number on it.

After the prosecution filed a notice to admit other-acts evidence, defendant filed a motion in limine to suppress that evidence. The trial court ruled that the physical evidence discovered on December 3 and the testimony of Kimberly and Smith linking defendant to the blue truck were admissible to establish knowledge and intent, which were required elements of the charges.

We review for an abuse of discretion preserved objections to admission of other-acts evidence. *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007); *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005). "However, whether a rule or statute precludes

---

[1] Because Janice Franks and Kimberly Franks are related and share the same last name, we will subsequently use their first names when we refer to them.

admission of evidence is a preliminary question of law that this Court reviews de novo." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes, *Orr*, 275 Mich App at 588-589, and it "necessarily abuses its discretion when it admits evidence that is inadmissibile as a matter of law," *Denson*, 500 Mich at 396, citing *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Under MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for nonpropensity purposes, including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." MRE 404(b)(1). But "[b]efore other-acts evidence may be introduced, the prosecution must satisfy a three-part test: (a) there must be a reason for its admission other than to show character or propensity, (b) it must be relevant, and (c) the danger of undue prejudice cannot substantially outweigh its probative value, especially if there are other means of proof." *McGhee*, 268 Mich App at 609; see also *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

"The first sentence of this rule represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *Denson*, 500 Mich at 397. "This rule reflects the fear that a jury will convict a defendant on the basis of his or her allegedly bad character rather than because he or she is guilty beyond a reasonable doubt of the crime charged." *Id*. The list of permissible purposes in MRE 404(b) is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Indeed, a proper purpose simply is one other than establishing a defendant's character to show his propensity to commit the charged offense. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). Once the first two prongs are satisfied, the third prong is merely a restatement of MRE 403. *People v Starr*, 457 Mich 490, 498; 577 NW2d 673 (1998). We give deference to the trial court's MRE 403 analysis because of its "contemporaneous assessment of the presentation, credibility, and effect of testimony." *VanderVliet*, 444 Mich at 81. The relevant portion of MRE 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence becomes unfairly prejudicial and should be excluded when "use of the evidence would be inequitable or if there is a danger that the jury will give it undue or preemptive weight." *People v Lane*, 308 Mich App 38, 55; 862 NW2d 446 (2014). In a case involving other-acts evidence under MRE 404(b), the court should also consider "[a]ny undue prejudice that arises because the evidence also unavoidably reflects the defendant's character" when performing the balancing test under MRE 403. *People v Jackson*, 498 Mich 246, 259-260; 869 NW2d 253 (2015).

Here, one of the charges against defendant was a violation of MCL 333.7401c, possession of laboratory equipment found on December 13, and one element of which required the prosecution to prove that at the time defendant possessed the equipment, he "knows or had reason to know" that it was to be used for the purpose of manufacturing a controlled substance. Thus, the trial court correctly found that the first prong of MRE 404(b) was satisfied because evidence relating to defendant's knowledge of methamphetamine manufacturing and intent to engage in such manufacturing was relevant.

Once the first prong of MRE 404(b) is satisfied, however, "the prosecution must also *explain how* the evidence is relevant to that purpose without relying on a propensity inference." *Denson*, 500 Mich at 402 (emphasis in original). Defendant was charged in a series of interrelated offenses involving possession of methamphetamine and possession of laboratory equipment for the purpose of manufacturing of methamphetamine. The physical evidence from the blue truck should have been ruled inadmissible because if the evidence relating to December 13 was believed, there could have been no doubt that defendant knew how to manufacture methamphetamine because that evidence showed that he had done so. Admitting evidence that he possessed laboratory equipment on December 3 which he "had reason to know" was to be used for producing methamphetamine stood on its head the normal cycle of how other-acts evidence is supposed to work. Rather than the other-acts evidence from the blue truck being used to illustrate defendant's mens rea for the charged offenses, the opposite was true—defendant's mens rea for the charged offenses was used to prove why he had possessed the laboratory equipment in the blue truck. Such an inversion of the use of other-acts evidence thus was improper because it merely constituted propensity evidence that defendant manufactured or intended to manufacture methamphetamine on another, uncharged occasion.

Thus, for example, Amber Smith testified that she directly observed defendant cooking methamphetamine on December 13, the date of the charged offenses. She also testified that she saw defendant driving the blue pickup truck on December 3. Janice Franks also testified that she saw defendant cook methamphetamine on December 13, when she purchased Sudafed for him for that purpose. And Trooper Long-Birgy found several items related to manufacturing methamphetamine on defendant's person after she arrested him on December 13, such as coffee filters. The mens rea required to convict requires that a defendant "knows or has reason to know" that the laboratory equipment was to be used for manufacturing a controlled substance. While the other-acts evidence certainly could show what defendant "had reason to know," that is, how the laboratory equipment could be used to manufacture methamphetamine, the evidence in this case demonstrated that as of December 13 he actually knew how to manufacture. Under the circumstances presented here, his actual knowledge made any evidence as to what he "had reason to know" irrelevant and unduly prejudicial, in that the evidence necessarily related to other uncharged drug crimes. See *McGhee*, 268 Mich App at 609 (emphasis added) (stating that the third prong under MRE 404(b) requires a consideration of whether the danger of undue prejudice substantially outweighs the probative value of evidence, "*especially if there are other means of proof*"). Under these circumstances, defendant's knowledge was not the issue for establishing his mens rea, but rather the truthfulness of the witnesses' testimony was the key. If the witnesses were telling the truth then it was obvious that defendant was engaged in manufacturing methamphetamine; and if defendant was engaged in manufacturing methamphetamine it was obvious that he knew the equipment he possessed was to be used to further that purpose. MCL 333.7401c(1)(b). In other words, if the jury believed that defendant manufactured methamphetamine then it necessarily would have found that he knew what the purpose of the equipment used for manufacturing it was.

Indeed, with the admission of testimony that defendant manufactured methamphetamine on December 13,[2] there was no need for any other-acts evidence relating to the uncharged date of December 3, and the admission of other-acts evidence as to that date was unduly prejudicial. MRE 403; see *VanderVliet*, 444 Mich at 55; *McGhee*, 268 Mich App at 609. The only reason for anyone to possess singular tools of the trade on one's person, such as multiple coffee filters and lithium strips, is for the purpose of unlawfully manufacturing methamphetamine. In addition, there was no claim or argument, nor was one possible on these facts, that defendant possessed the materials for some other purpose, such as making coffee or some other lawful drink, which would have genuinely put his knowledge and intent at issue. Consequently, admitting evidence tying defendant to the truck on December 3 simply led to an inference of propensity, by linking defendant to the manufacture of methamphetamine on another, uncharged occasion but where such evidence did not otherwise help establish his mens rea.

Moreover, the evidence regarding the December 3 incident involving the blue pickup truck was simply that defendant (1) was in control of it by driving it that day; (2) he was involved in cooking methamphetamine on December 13, using particular items; and (3) on December 3, the truck was found to contain similar tools of the trade, such as coffee filters. Rather than helping to establish the truth of the principal charges involving December 13, by showing that defendant, as of that date knew how to manufacture methamphetamine because he had been in possession of the tools to do so ten days earlier, the proofs were more that defendant must have known as of December 3 how to manufacture the drug because he did so on the later date. As noted, the proofs were simply that defendant manufactured methamphetamine using a bottle and the filters on December 13, and that the truck on December 3 contained similar items such as coffee filters. Thus, the inference which the other-acts evidence led to was that defendant must have used those items in a similar manner on December 3, and thus had criminal intent on that date, even though the admissibility of the other-acts evidence was premised on proving defendant's mens rea on December 13. As a result, the admission of evidence regarding the events of December 3 was erroneous as it merely showed his propensity to commit drug crimes on December 13.

Therefore, the other-acts evidence was inadmissible based on the second prong of the MRE404(b) test. Furthermore, as we have noted, even if such evidence were otherwise relevant, it was unduly prejudicial to admit it under the circumstances presented here and should have

---

[2] We note that evidence of defendant manufacturing methamphetamine on December 13 was itself other-acts evidence. Defendant was not charged with manufacturing methamphetamine, and even the charge that he unlawfully possessed the drug on that date did not require proof that he had manufactured it, only that he was in possession of it; thus, proof that he did manufacture methamphetamine constituted proof of another, uncharged crime. Defendant did not object at the trial court and does not challenge the admissibility of this evidence on appeal.

been barred under the third prong of MRE 404(b). Consequently, the trial court erred in the admission of the evidence relating to December 3.[3]

Thus, we must consider the effect of the improper admission of the other-acts evidence. Importantly, "[w]hen we find error in the admission of evidence, a preserved nonconstitutional error 'is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict.' " *Denson*, 500 Mich at 396, quoting *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014). Such an analysis " 'focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence,' " in order " 'to determine whether it is more probable than not that a different outcome would have resulted without the error.' " *Id.* at 396-397, citing *Lukity*, 460 Mich at 495.

Applying that standard here, we have little difficulty concluding that the admission of evidence relating to the December 3 episode could not have led to a different outcome at trial than would have occurred had such evidence been excluded. Defendant was arrested in possession of items which had no legitimate uses in the combinations in which they were found other than the manufacture of methamphetamine. Indeed, upon his arrest and the discovery of those items, defendant stated to the arresting officer, "You got me." Defendant's guilt was corroborated by the testimony of the two immunized accomplices, which included a description of defendant's cooking of methamphetamine and the involvement of one of the witnesses in buying Sudafed, the basic ingredient in methamphetamine. Under these circumstances, it is clear that even absent the admission of the other-acts evidence, a jury would have found defendant guilty. He is unable to overcome the presumption that the admission of such evidence was not outcome determinative. *Denson*, 500 Mich at 396.

## II. SCORING OF OFFENSE VARIABLE 14

Defendant also argues that the trial court erred in assigning 10 points for offense variable (OV) 14. Specifically, defendant claims that there was insufficient evidence to show that this was a multiple-offender situation, which makes the scoring of 10 points inapplicable. We disagree.

---

[3] We note that many of the evidentiary difficulties relating to the December 3 and December 13 incidents involving defendant and the two immunized witnesses could have been avoided simply by charging a conspiracy involving all three of them to manufacture, to deliver and to possess with intent to deliver methamphetamine during that time period. See MCL 750.157a; *People v Mass*, 464 Mich 615; 628 NW2d 540 (2001). If that had been the charge, the events of December 3 would not have constituted other-acts evidence, but would have constituted evidence of the charged conduct, the conspiracy. Nothing would have prevented the prosecution from giving immunity to the two witnesses for a conspiracy in the same manner in which the prosecution immunized them at trial.

A trial court's factual findings pertaining to the scoring of guidelines variables are reviewed for clear error and "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Under the clear error standard, this Court will not displace a trial court's factual findings unless this Court is left with a definite and firm conviction that a mistake was made. *People v Thompson (On Remand)*, 314 Mich App 703, 708; 887 NW2d 650 (2016). Whether the facts found by the trial court are adequate to trigger the scoring of a particular guidelines variable is a question of statutory interpretation that is reviewed de novo. *Hardy*, 494 Mich at 438.

OV 14 relates to an "offender's role . . . in a multiple offender situation," and the trial court must assess the maximum points applicable against a defendant considering the entire criminal transaction. MCL 777.44(1) and (2); *People v Gibbs*, 299 Mich App 473, 493-494; 830 NW2d 821 (2013). A court properly scores 10 points for this OV if the defendant "was a leader in a multiple offender situation." MCL 777.44(1)(a). Generally, offense variables are scored on an offense-specific approach, but because the statute for OV 14 provides that the "entire criminal transaction should be considered," OV 14 is scored differently—specifically, OV 14 "must be assessed for conduct extending beyond the sentencing offense." *People v McGraw*, 484 Mich 120, 127; 771 NW2d 655 (2009).

Here, the trial court found that this was a multiple-offender situation because both Janice and Smith "aided and abetted" defendant, who directed Janice's and Smith's involvement. This finding is not clearly erroneous. "The phrase 'aids or abets' [in the aiding and abetting statute, MCL 767.39[4]] is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). The record shows that Janice purchased Sudafed to be used for methamphetamine production at defendant's direction. Janice testified that she was aware of defendant's plans to make methamphetamine with the Sudafed when she purchased the Sudafed, and she gave it to him so he could fulfil that purpose. Hence, Janice knowingly provided assistance to defendant in the commission of the crime. The record also shows that defendant directed Smith where to drive in order to obtain the components needed to produce methamphetamine and that she willingly did so. Importantly, Smith described the plan to make methamphetamine as a joint venture when she stated, "We were planning on making meth." Thus, we are not left with a definite and firm conviction that the trial court erred

___

[4] MCL 767.39 provides: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

when it found that a preponderance of the evidence showed that Janice and Smith participated in the criminal transaction along with defendant and that defendant was the leader. Therefore, the trial court did not err when it scored OV 14 at 10 points.

Affirmed.

/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel