# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

PHILIP DESHA HICKS,

   Defendant-Appellant.

UNPUBLISHED
June 19, 2018

No. 336959
Ingham Circuit Court
LC No. 16-000163-FC

Before: CAMERON, P.J., and METER and BORRELLO, JJ.

PER CURIAM.

  Defendant was convicted by jury of assault with intent to murder (AWIM), MCL 750.83, intentional discharge of a firearm in or at a dwelling causing serious impairment, MCL 750.234b(4), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to concurrent prison terms of 225 to 480 months for AWIM and 120 to 240 months for discharging a firearm, to be served consecutive to a two-year prison term for felony-firearm. For the reasons set forth in this opinion, we affirm.

  This case arises out of a shooting that occurred in the early morning of January 1, 2016, seriously injuring 16-year-old Dalasia Jackson.[1] Dalasia's sister, Tajanay Jackson, was hosting a party at her apartment with family members and some friends. Dalasia arrived at Tajanay's before midnight. Also present were Casniera Biggs, the Jacksons' cousin; Ivana Andrews-Demyers, Biggs's cousin; and Lashaya Bridgeman, Andrews-Demyers' friend.

  After midnight, defendant arrived with his girlfriend, Roya Crusoe. Tajanay and Dalasia were upset that defendant came to the party because there was a feud between defendant and Ladale Jackson—Tajanay and Dalasia's brother. In fact, there had been two prior shootings at the Jackson family home, one in April 2015 and one in December 2015, and the Jacksons believed that defendant was the shooter.

---

[1] Because of the number of relatives with the same last name, we use first names to refer to the members of the Jackson family involved in this case.

-1-

At the party, Dalasia asked defendant and Crusoe to leave because of the conflict with Ladale. According to Dalasia, defendant replied, "Eff your brother," and refused to leave. Dalasia then asked defendant if he was the one "shooting up houses." In response, defendant "smirked and laughed." A fight soon broke out among several party attendees. According to Andrews-Demyers, Crusoe began hitting her, and defendant then threw Andrews-Demyers to the floor and punched her twice. Dalasia and Biggs reported that defendant hit Biggs in the face and, when she fell, stomped on her face. At one point during the fight, several lights broke and it got dark in the house. There was a dispute at trial about whether the kitchen light was on or whether it was "pitch black." At that time, people started running out of the apartment. Dalasia testified that defendant was the last to leave, and she saw him put his right hand in his pocket as he was walking out the door. Andrews-Demyers, who had been carried out of the apartment, was outside by her car, and she saw defendant a few feet behind her. Andrews-Demyers then saw defendant raise a gun and shoot it toward the apartment. Bridgeman was also outside during the shooting and described the shooter as a black man, but could not otherwise identify the shooter. Dalasia was shot in the back and collapsed.

An investigation revealed that the shell casings from the shootings in April and December 2015 at the Jackson home matched the shell casings from the shooting in this case. Before trial, the prosecution filed a notice of intent to introduce the prior shootings as other-acts evidence. After a hearing, the trial court ruled that evidence of those shootings was admissible to show common scheme, identity, and intent.

At trial, Lansing Police Department Lieutenant Robert Backus and Lansing Police Department Detective Michael Looney referred in their testimony to defendant's prior warrants and probation, and to the fact that his information was in the Michigan Department of Corrections (MDOC) database. During Looney's testimony, defense counsel objected and requested to approach the bench. The trial court instructed Looney to refrain from any mention of defendant's criminal history. Defense counsel requested a limiting instruction, which the trial court agreed to give. After the close of testimony, counsel moved for a mistrial, stating that the limiting instruction about Backus's and Looney's testimony would only highlight the testimony. Counsel stated that the evidence was "beyond prejudicial" and that there was no way to cure the error. The trial court ruled that there was "not manifest necessity" for a mistrial because the court could give a limiting instruction and because the court believed that this jury "seemed very fair" and "willing to follow the instructions." Defendant then declined a limiting instruction despite the trial court's offer to give one.

The trial court instructed the jury about the use of the other-acts evidence. The court stated that the jury must "only think about whether this evidence tends to show that the defendant specifically had the intent to kill or who committed the crime the defendant is charged with." The trial court stated that the jury could not use the evidence to prove that defendant was a "bad person" or "likely to commit crimes." During deliberation, the jury asked for clarification about this instruction, stating that jurors "[did not] know what evidence and testimony was relevant" to the MRE 404(b) instruction. The trial court reminded them to consider the evidence "only for one of the permissible purposes set forth in the jury instruction." The jury subsequently returned verdicts of guilty on all charges.

On appeal, defendant first argues that the trial court erred in admitting evidence of the April and December 2015 shootings under MRE 404(b). We disagree.

We review for an abuse of discretion the trial court's decision to admit this other-acts evidence. *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005); *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). A trial court abuses its discretion when it admits evidence that is inadmissible as a matter of law, *McGhee*, 268 Mich App at 609, or when the decision is "outside the range of reasonable and principled outcomes," *Orr*, 275 Mich App at 588-589. When there is a preliminary question of law regarding a decision to admit evidence, such as whether admissibility of the evidence is precluded by a statute or rule of evidence, this Court reviews the issue de novo. *People v Buie*, 298 Mich App 50, 71; 825 NW2d 361 (2012).

Under MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for nonpropensity purposes, including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." *Id*. Admission of "other-acts" evidence involves a four-pronged standard: (1) the prosecution must offer the evidence for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its prejudicial effect; and (4) upon request, the trial court may provide a limiting instruction to the jury. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). See also *People v Denson*, 500 Mich 385, 398; 902 NW2d 306 (2017).

The prosecution offers other-acts evidence for a proper purpose when its purpose is something other than demonstrating propensity to commit crimes. *VanderVliet*, 444 Mich at 63, 74; MRE 404(b)(1). The list of permissible purposes in MRE 404(b)(1) is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). However, the prosecution must do more than "mechanically recite a permissible reason." *McGhee*, 268 Mich App at 610.

Other-acts evidence is relevant when it has any tendency to make a material fact more or less probable. *Id*.; MRE 401. A defendant's general denial does not prevent other-acts evidence from being relevant because a general denial puts all elements of an offense at issue. *VanderVliet*, 444 Mich at 77-79; see also *People v Martzke*, 251 Mich App 282, 293; 651 NW2d 490 (2002) (holding that a not guilty plea puts all elements of an offense at issue). Other-acts evidence is relevant for a purpose other than a propensity for violence if it "tends to show why a perpetrator committed a seemingly random and inexplicable attack . . . ." *Orr*, 275 Mich App at 591, quoting *People v Hoffman*, 225 Mich App 103, 108; 570 NW2d 146 (1997) (quotation marks omitted). In *Orr*, the defendant was charged with murder and felony-firearm, and this Court upheld the admission of a prior nonfatal shooting by the defendant involving the same victim to show motive, intent, and absence of mistake. *Orr*, 275 Mich App at 588-590.

The third prong of the test in *VanderVliet* is simply a restatement of MRE 403. *VanderVliet*, 444 Mich at 70-72; *People v Starr*, 457 Mich 490, 498; 577 NW2d 673 (1998). The relevant portion of MRE 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Any tendency to support a material fact at issue constitutes sufficient probative value. *Starr*, 457 Mich at 497-498; *People v Lane*,

308 Mich App 38, 55; 862 NW2d 446 (2014). All evidence contrary to the defendant's case is prejudicial, but prejudice in the context of an MRE 403 analysis "means more than simply damage to the opponent's cause." *People v Vasher*, 449 Mich 494, 501; 537 NW2d 168 (1995). This Court gives deference to the trial court's MRE 403 analysis because of its "contemporaneous assessment of the presentation, credibility, and effect of testimony." *VanderVliet*, 444 Mich at 81.

In a case involving other-acts evidence under MRE 404(b), the trial court should also consider "undue prejudice that arises because the evidence also unavoidably reflects the defendant's character" when performing the balancing test under MRE 403. *People v Jackson*, 498 Mich 246, 259-260; 869 NW2d 253 (2015) (quotation marks and citation omitted). In *Orr*, this Court held that the value of the prior shooting evidence "could not be outweighed by its prejudicial effect" because shooting the same victim during a prior altercation was highly probative. *Orr*, 275 Mich App at 592.

Finally, an instruction from the trial court to use the evidence only for its proper purposes "can help mitigate any prejudicial effect" of the other-acts evidence. *Id*. at 593. Juries are presumed to follow their instructions. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

The trial court did not err when it admitted the other-acts evidence. Defendant put all elements of the crimes charged at issue when he pleaded not guilty. This evidence was relevant because it tended to make it more likely that defendant was the shooter, that he intended to fire a gun at Tajanay's residence, and that he intended to murder a member of the Jackson family. *McGhee*, 268 Mich App at 610; MRE 401. The shell casings from all three shootings matched. There was also eyewitness testimony indicating that defendant was the one who shot Dalasia. All three shootings involved members of the Jackson family. There was also testimony about an ongoing feud between defendant and Ladale. Because the shell casings matched for all three shootings, the prior shootings targeted the Jackson family, and there was evidence of a feud between defendant and Ladale, the admission of the other-acts evidence gave context to what otherwise may have been perceived as a "seemingly random" shooting on January 1, 2016. *Orr*, 275 Mich App at 591 (quotation marks and citation omitted). If defendant committed the prior shootings, it made it more likely that he also committed the shooting at issue and intended to murder someone on that date. Therefore, the other-acts evidence was relevant.

Defendant argues that the probative value of the evidence was substantially outweighed by its unfairly prejudicial effect because defendant was not a suspect in the prior shooting, there was no evidence that he committed the prior shootings, and the credibility of the witnesses linking him to the shell casings was highly suspect. Contrary to defendant's arguments, however, the scope of MRE 404(b) is not limited to evidence about arrests, charges, or convictions, and has been used to admit uncharged acts. See, e.g., *Starr*, 457 Mich at 492, 499. Since the other-acts evidence bolstered the eyewitness testimony identifying defendant as the shooter in this case and made it more likely that defendant also committed the shooting on January 1, 2016, it was highly probative. Evidence that defendant had targeted the Jackson family in two prior shootings served to negate the assertion that someone else committed this shooting at a party where a large proportion of the attendees were members of the Jackson

family. Although the evidence was prejudicial, it was not unfairly prejudicial in light of its high probative value. MRE 403.

Furthermore, the trial court gave a limiting instruction, instructing the jury to consider the evidence only for the purposes of determining whether defendant committed the crime and whether he had the intent to kill. Juries are presumed to follow their instructions, *Abraham*, 256 Mich App at 279, and a limiting instruction can help mitigate any prejudicial effects, *Orr*, 275 Mich App at 593.

Defendant also argues on appeal that the testimony from Looney and Backus about his prior criminal history was improper other-acts evidence and that the trial court should have granted defendant's request for a mistrial on the basis of this testimony. We disagree. A mistrial should be granted only when "an error or irregularity in the proceedings" causes prejudice to the defendant or diminishes his chance of a fair trial. *People v Wacklawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009). On appeal, defendant cites no authority in support of his argument that the testimony about his criminal history was grounds for a mistrial. An issue is waived on appeal when a defendant fails to cite any authority for his position. *People v Pena*, 224 Mich App 650, 664; 569 NW2d 871 (1997). Further, the prosecution did not solicit the testimony from Backus or Looney about defendant's criminal history; instead, this testimony was offered when the prosecution asked unrelated questions. "[A]n unresponsive, volunteered answer to a proper question is not cause for granting a mistrial." *People v Gonzales*, 193 Mich App 263, 266-267; 483 NW2d 458 (1992), quoting *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988). Therefore, it was not an abuse of discretion for the trial court to deny defendant's request for a mistrial.

Defendant next argues that trial counsel's failure to present two witnesses, Diego Terry and Crusoe, constituted ineffective assistance of counsel. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or request a *Ginther*[2] hearing raising the issue. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant filed a motion in this Court to remand for a *Ginther* hearing, which was denied.[3] However, defendant failed to accompany the motion with any affidavits or an offer of proof, as required by MCR 7.211(C)(1). Accordingly, this issue is unpreserved. Generally, whether a defendant was denied the effective assistance of counsel is a mixed question of fact and law. *Heft*, 299 Mich App at 80. We review for clear error the trial court's findings of fact and review de novo the trial court's legal determinations. *Id*. However, because the trial court did not hold an evidentiary hearing, this Court's review is limited to the facts on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] *People v Hicks*, unpublished order of the Court of Appeals, entered November 16, 2017 (Docket No. 336959).

"[A] defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). In evaluating a claim of ineffective assistance of counsel, there is a "strong presumption" that counsel's actions constituted sound trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). This Court does not "substitute [its] judgment for that of counsel on matters of trial strategy," nor do we assess counsel's competence with the "benefit of hindsight." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). To establish prejudice, a defendant "must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

A defendant claiming ineffective assistance of counsel must establish the "factual predicate" for his claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). If the facts on which a defendant relies to support his claim are not part of the trial court record, "it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately." *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973) (quotation marks and citation omitted).

Choosing what witnesses to call is a matter of trial strategy, constituting ineffective assistance of counsel only when failure to do so "deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). In *Dixon*, the defendant, who was convicted of criminal sexual conduct, alleged ineffective assistance of counsel based on counsel's "failing to present the defense of consent." *Id.* We disagreed because the record revealed that counsel "raised the defense of consent through her cross-examination of the complainant," attempted "to bolster that defense by attacking her credibility," and raised the defense in closing argument. *Id.* Cf. *People v Bass*, 247 Mich App 385, 392; 636 NW2d 781 (2001) (holding that defense counsel's performance was deficient, prejudicing the defense, when counsel failed to call "two known supporting witnesses" and, at an evidentiary hearing on the matter, counsel testified that she "could not locate her file on the case, could not recall the case, could not recall whether she had the opportunity to interview [the witnesses] before trial, could not recall why she did not call [the witnesses] or even what the defense of the case was, and [did] not have a usual procedure that might indicate what she did on defendant's behalf").

In this case, defendant has failed to establish that his counsel was ineffective. Defendant argues that defense counsel was ineffective because he failed to call Terry and Crusoe as witnesses. Defendant contends that defense counsel's failure to call Crusoe was not valid trial strategy because Crusoe was with defendant when the shooting occurred, but does not state what Crusoe's testimony would have been. He also contends that Terry would have testified that defendant was not the shooter and that Andrews-Demyers had falsely identified defendant because she was angry at defendant for breaking off a relationship with her. However, nothing in the record suggests that Andrews-Demyers ever had a dating or sexual relationship with

defendant. Defense counsel also extensively cross-examined Andrews-Demyers, and nothing in her testimony supports defendant's claims.

Moreover, defendant failed to produce an affidavit or offer of proof outlining what these witnesses' testimony would have been. There was nothing in the record to indicate whether trial counsel interviewed Crusoe or Terry or that either of them would have identified someone other than defendant as the shooter. Crusoe refused to give a statement. Police officers interviewed Terry, and defendant claims that testimony elicited from Looney at trial suggests that Terry identified someone other than defendant as the shooter. However, Looney testified that no information had been presented to the police that anyone other than defendant was the shooter. Further, Looney's testimony about his interview with Terry indicated only that Terry did not affirmatively identify defendant as the shooter. In fact, Terry repeatedly told Looney during the interview that he was "drunk" at the party and did not remember what happened. Because nothing in the record indicates that defense counsel failed to investigate Crusoe or Terry or that the failure to call Crusoe or Terry as witnesses deprived defendant of a substantial defense, defendant cannot establish that counsel's performance fell below an objective standard of reasonableness.

Defendant argues that these failures undermine confidence in the outcome because, without testimony from Terry and Crusoe, there was nothing to corroborate defendant's claim that he was not the shooter, and because Andrews-Demyers' testimony was "wildly inconsistent" with her statements to the police during her interview with them. However, even assuming *arguendo* that the failure to call these witnesses fell below an objective standard of reasonableness, defendant has not demonstrated that the failure to produce their testimony was outcome-determinative. Defense counsel cross-examined Andrews-Demyers extensively and pointed out a multitude of inconsistencies in her testimony, and there is nothing in the record to support defendant's claim that either Terry or Crusoe would have testified favorably for the defense.

Finally, defendant argues that the verdict was against the great weight of the evidence. We disagree.

To preserve a claim that the verdict was against the great weight of the evidence, a defendant must move for a new trial at the trial court level. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant filed a motion for a new trial with his appeal, but failed to file a motion for a new trial at the trial court level. Accordingly, this issue is unpreserved. This Court reviews an unpreserved claim that the verdict was against the great weight of the evidence for plain error affecting substantial rights. *Id*. at 618. This Court may consider "[a]ny plain error that affects a party's substantial rights" regardless of whether it was brought to the trial court's attention. *Id*.

A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Generally, this Court may vacate a verdict "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*.

Witness credibility is "implicit" in making a determination about whether a verdict is against the great weight of the evidence. *People v Lemmon*, 456 Mich 625, 638; 576 NW2d 129 (1998). This Court does not substitute its view on the issue of witness credibility for that of the jury "absent exceptional circumstances." *Id*. at 642. When "testimony is in direct conflict and testimony supporting the verdict has been impeached," we leave the determination of witness credibility to the jury if "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it." *Id*. at 643 (quotation marks and citation omitted). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647.

In this case, the evidence supported the verdict. Defendant's argument on appeal seems to be that since Andrews-Demyers and Dalasia were the only witnesses to identify defendant as the shooter, and their credibility was suspect, the verdict was plain error. Since witness credibility cannot be the basis of a claim that a verdict was against the great weight of the evidence unless it was so impeached that it was "deprived of all probative value," *Lemmon*, 456 Mich at 643, defendant's claim fails. Dalasia testified that she saw defendant reach into his pocket when he was leaving the apartment immediately prior to the shooting and that defendant "smirked and laughed" when she asked him if he was the shooter on the two prior occasions. Andrews-Demyers testified that she saw defendant shoot a gun toward the apartment. Defense counsel also elicited testimony that Dalasia did not actually see defendant with a gun during any of the three shootings and spent a significant amount of time attempting to impeach Andrews-Demyers' credibility. Despite this testimony, the jury apparently found the identification testimony credible. While there were inconsistencies in Andrews-Demyers' story, the witnesses' credibility was not so impeached as to deprive their testimony of all probative value. *Lemmon*, 456 Mich at 643. Therefore, the verdict was not against the great weight of the evidence.

Affirmed.

/s/ Thomas C. Cameron
/s/ Patrick M. Meter
/s/ Stephen L. Borrello

-8-